IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Brian Sharp, | ) | C/A No.: 1:09-2402-JFA-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Leonard Longe, Jerry Alexander, and | ) | |
| Tim Riley, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding pro se, has alleged violations of his constitutional rights, which are construed as brought pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate with the South Carolina Department of Corrections ("SCDC") and is incarcerated at Tyger River Correctional Institution ("TRCI"). Defendants are all employees of the SCDC at TRCI. Before the court is Defendants' Motion for Summary Judgment [Entry #32]. All pretrial proceedings in this case were referred to the undersigned magistrate judge pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.).

I.      Factual and Procedural Background

Plaintiff complains that on August 11, 2008, he was placed in a one-man cell in the Special Management Unit ("SMU") that had no running sink water. Compl. at 6 [Entry #1]. Plaintiff claims he was told he would have to ask the correctional officers for water. *Id.* Plaintiff alleges he asked defendant Longe for water on the morning of August 12, 2008, but was ignored. *Id.* Plaintiff alleges he became very thirsty, and when Longe passed by his door again, Plaintiff beat on the door to get his attention. *Id.* Longe gave

Plaintiff a directive to stop beating on the door and walked away without providing Plaintiff water. *Id.*  Plaintiff claims that "a little while later" he "began to feel panicky because of his extreme thirst." Compl. at 7 [Entry #1]. Plaintiff again beat on his cell door and asked for water.  Longe opened Plaintiff's food flap and Plaintiff crouched down to pass Longe his water cup.  Plaintiff alleges Longe did not take the cup and instead sprayed him with 8.5 grams of mace.[1] *Id.*

Plaintiff alleges he "hollered out in pain," "felt an excruciatingly painful burning sensation in his eyes, skin, lungs, and orifices," had an allergic reaction, and could barely breathe. *Id.*  Plaintiff claims that he asked Longe to let him take a shower, but was told that he had water in his cell. *Id.* Plaintiff states that he was forced to wash his face and eyes out in his toilet. Compl. at 8. Plaintiff alleges he "continued to have labored breathing and burn painfully for over ten hours." *Id.*  Plaintiff claims to experience panic attacks, nightmares, and extreme paranoia as a result of the incident.  *Id.* at 9.  Plaintiff has brought suit against Longe for his direct role in the incident.  Plaintiff's claims against defendants Alexander and Riley are for their alleged deliberate indifference to the alleged violations of his rights and for their failure "to resolve" Plaintiff's allegations through the prison grievance process.

Defendants filed a motion for summary judgment on March 22, 2010.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the

---

[1] The term "mace" is a trade name for a particular brand of pepper spray, although term is most commonly used as a generic word for pepper spray. *See, e.g., United States v. Robinson*, 20 F.3d 270, 278 (7th Cir.1994)

summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #35]. Plaintiff filed a response in opposition to Defendants' motion [Entry #46]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted.

II.     Discussion

    A.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." *Id*. The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."

    B.    Analysis

        1.    Excessive Force

Plaintiff claims Longe's use of the mace constitutes excessive force in violation of the Eighth Amendment. It is well-established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992).

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency are always violated . . . whether or not significant

4

injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 130 S.Ct. at 1178 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322.

Federal courts closely scrutinize the use of tear gas or mace in correctional facilities. *See, e.g., Bailey v. Turner*, 736 F.2d 963 (4th Cir. 1984); *Greear v. Loving*, 538 F.2d 578 (4th Cir. 1976). This is because, even when properly used, such weapons "possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). Accordingly, although it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the

purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment." *Bailey*, 736 F.2d at 969; *see also, Justice v. Dennis*, 834 F.2d 380, 383 (4th Cir. 1987) (en banc), *vacated on other grounds*, 490 U.S. 1087 (1989).

However, mace can be constitutionally used in small quantities to control a "recalcitrant inmate." *Bailey*, 736 F.2d at 968-69. A limited application of mace may be "much more humane and effective than a flesh to flesh confrontation with an inmate." *Soto v. Dickey*, 744 F2d 1260, 1270 (7th Cir. 1984). Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain. *Id*. Furthermore, because a limited use of mace constitutes a relatively "mild" response compared to other forms of force, the initial application of mace indicates a "tempered" response by the prison officials. *Williams v. Benjamin*, 77 F3d 756, 763 (4th Cir. 1996).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Here, Longe's decision to use some force was justified, as Plaintiff admits that he continued to beat on his cell door after Longe issued a directive to stop. It appears that

the need for force and the amount of force used was not unreasonable, as Longe administered a one to two second burst of "top cop" pepper spray, which was determined to be 8.5 grams. Beyond his own allegations, Plaintiff has provided no evidence, in the form of medical records or otherwise, that he was injured by the exposure to pepper spray. Additionally, Longe was reasonable in perceiving a threat from Plaintiff, who admits that he disobeyed Longe's direct order. Although Plaintiff was confined in his cell, inmates cannot be allowed to be disruptive and violate direct orders of the correctional officers. Finally, Longe took no further disciplinary action, and Plaintiff was allowed to wash off with water from his toilet. Therefore, after balancing the *Whitley* factors, and based on the record presented, the undersigned submits that Plaintiff has failed to establish a claim for excessive force and Defendants are entitled to summary judgment.

      2.      Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

III.    Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #32] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

January 7, 2011                                         Shiva V. Hodges
Florence, South Carolina                                United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**